1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

NORTHERN DISTRICT OF CALIFORNIA

10

SAN JOSE DIVISION

11

12

ROGER A. IKEDA, et al.,

Case No. 20-CV-02768-LHK

13

Plaintiffs,

**ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND**

14

v.

Re: Dkt. No. 50

15

BAIDU, INC. et al.,

16

Defendants.

17

Lead Plaintiff Robert J. Allustiarti, individually and on behalf of all other persons similarly

18

situated ("Plaintiff"), alleges that Defendants Baidu, Inc.; Yanhong Li; and Cheng-Chun Yu

19

(collectively, "Defendants") violated federal securities laws. Before the Court is Baidu's motion to

20

dismiss Plaintiff's Amended Complaint. ECF No. 50. Having considered the parties' submissions,

21

the relevant law, and the record in this case, the Court GRANTS Baidu's motion to dismiss with

22

leave to amend.

23

**I.   BACKGROUND**

24

    **A.  Parties**

25

Plaintiff sues Defendant Baidu, Inc. ("Baidu"), which is a Cayman Islands corporation with

26

its headquarters in Beijing, China. ECF No. 41 ("AC") ¶ 25. Since at least 2005, Baidu has

27

28

Case No. 20-CV-02768-LHK
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND

United States District Court
Northern District of California

1    sponsored American Depositary Shares ("ADSs") that trade on the NASDAQ. *Id*. ¶ 26.

2    Plaintiff also sues Defendants Yanhong Li ("Li") and Cheng-Chun Yu ("Yu") (collectively,

3    "the Individual Defendants"). Li is Baidu's Chief Executive Officer and Chairman of Baidu's

4    Board of Directors. *Id*. ¶ 27. Yu is Baidu's Chief Financial Officer. *Id*. ¶ 29.

5    Plaintiff Robert J. Allustiarti purchased Baidu's securities and allegedly suffered damages.

6    *Id*. ¶ 24.

7    **B. Baidu's Business Model**

8    Baidu is the largest search engine in China and the second largest search engine in the

9    world. *Id*. ¶ 37. Baidu allows users "to search for and access relevant Chinese language websites,

10   news, images and multimedia files." *Id*.

11   Baidu also offers a mobile application, Baidu App, which features "a twin-engine search-

12   plus-feed function." *Id*. ¶ 39. On Baidu App, users can access Baidu Feed, which "offers users a

13   personalized timeline that passively suggests content based on users' demographics, browsing

14   history, and past online behavior." *Id*. ¶ 40. Baidu Feed "uses the Company's AI algorithm to

15   recommend content based on the content's quality, evaluating the text of the content to determine

16   whether it is good or bad and surveying comments posted by users to determine whether or not

17   readers like the material." *Id*. ¶ 40.

18   "Baidu's app portfolio also includes a multitude of products that allow users to generate and

19   share content in various forms." *Id*. ¶ 42. "For instance, Baidu Post Bar is a social media platform

20   where users can build online communities by posting text, image, and video content in users' areas

21   of interest and generating discussion groups around cultural trends." *Id*. "Baidu's Haokan allows

22   users and professional content creators to generate and share short form videos, typically several

23   minutes long, and receive revenue from views." *Id*. "Baidu's Quanmin allows users to create, edit

24   using special effects, and share minute-long videos," which are distributed "in personalized Feed

25   timelines." *Id*. Finally, "Baidu's blog platform, Baijiahao, consists of a network of over two

26   million content providers who write articles and share content in various forms, including images,

27

28

Case No. 20-CV-02768-LHK
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND

United States District Court
Northern District of California

graphs, videos, and live broadcasts." *Id*. ¶ 43.

"Baidu's Search, Feed, and video products, along with Baidu's knowledge and information products and AI businesses, comprise Baidu's Core business segment." *Id*. ¶ 45. "Baidu derives the majority of its Baidu Core revenue from its online marketing services and as such, the Company's business model is dependent on user engagement." *Id*. For the 2019 Fiscal Year, more than 72% of Baidu's total revenue was derived from online marketing. *Id*.

### C. Chinese Restrictions on Content

Based on its operations in China, Baidu is subject to regulation by Chinese entities. *Id*. ¶¶ 5, 51. In May 2011, the Chinese government established the State Internet Information Office (SIIO) "to centralize internet regulations, promote cyberspace security, and supervise online content regulation." *Id*. ¶ 51. "With respect to content, the SIIO's intended purpose was preventing abusive uses of the internet, like fraud, online pornography, vulgar content, and illegal online marketing schemes." *Id*. In February 2014, Chinese President Xi Jinping created the Cybersecurity Administration of China ("CAC"), which is "a subordinate organization responsible for establishing internet security." *Id*.

The Chinese government has promulgated "a series of laws, regulations, and policies . . . to manage online content." *Id*. ¶ 52. These regulations include the following:

- On June 25, 2016, the CAC "promulgated 'Provisions on the Administration of Internet Information Search Services' banning search providers like Baidu from publishing prohibited content in links, summaries, cached pages, searches, and recommended webpages." *Id*. ¶ 53. These regulations "placed the onus on the search service providers to perform real-time monitoring to prevent the publication of illegal content, remove it and report it to regulators." *Id*.

- "On June 29, 2016, the SIIO and CAC issued 'Regulations on the Management of Mobile Internet Application Information Services,'" which required "that mobile application providers establish content review mechanisms and take measures or suspend or cancel violating accounts," and that "mobile app users' accounts be authenticated using their real identities and mobile phone numbers." *Id*. ¶ 54.

- "On May 2, 2017, the CAC promulgated the 'Provisions for the Administration of Internet News Information Service[,]' requiring online Chinese news providers" to comply with the Chinese laws and regulations and remove content that did not

3

United States District Court
Northern District of California

comply. *Id*. ¶ 55.

- "On August 25, 2017, the CAC issued a set of regulations, entitled 'Provisions on the Administration of Internet Forum Community Service Management[,]' extending the scope of its real-identification requirements to online forums" and requiring that "online forum providers like Baidu . . . monitor for illegal content." *Id*. ¶ 56.

- "On December 20, 2019, the CAC promulgated 'Provisions on the Ecological Governance of Network Information Content'" which prohibited online content providers from publishing content that spreads obscenity, pornography, gambling, violence, murder, terror, or instigates crime, and from publishing content "that uses exaggerated titles and features content that is inconsistent with the title . . . or is sexually suggestive or provocative." *Id*. ¶ 57. These regulations "placed the onus for managing content onto the providers." *Id*.

**D.  Baidu's Screening of Illegal Content**

To review and remove illegal content from its apps and platforms, Baidu allegedly uses a security review and a content review. *Id*. ¶ 48. "The security review determines whether content can be published." *Id*. "The quality review decides whether the content can be recommended by the platform or not." *Id*.  For both the security review and the content review, "Baidu employs a dual strategy, utilizing both technological screening and human reviewers." *Id*.

Plaintiff alleges that "[a]t all relevant times, Baidu lacked adequate managerial staff to enforce review standards and often relied on reviewers' personal judgments." *Id*. ¶ 49. Plaintiff also alleges that "reviewers' workloads require[d] that they review each article for content within 2 to 10 minutes." *Id*. "Thus, any slight carelessness by a reviewer can easily cause problems." *Id*. Plaintiff alleges that, "[w]ith sales quotas looming at the end of each month," "Baidu's content reviewers applied a less rigorous content review standard to advertisements, allowing the publication of ads with questionable content in the interest of making the sale to the customer." *Id*. According to Plaintiff, "Baidu published these questionable ads late at night to limit the likelihood that Chinese content regulators would find the ads." *Id*. ¶ 50. In addition, "Baidu's procedure for verifying its users' identities . . . could not adequately detect instances where a publisher registered using a fake name and a video of the person's face associated with the fake name to verify the account," which "allowed publishers to register accounts using fake real-id registrations." *Id*.

4

### E. Baidu's History of Investigations and Sanctions by Chinese Regulators

According to Plaintiff, Baidu has a long history of investigations and sanctions by Chinese regulators. *Id.* ¶¶ 62–74. These investigations and sanctions include the following:

- "In January 2009, for instance, Baidu was subject to 'severe punishment' from the Chinese government for allowing its users to find and access pornography." *Id.* ¶ 63.

- "Baidu again came under scrutiny for hosting pornographic content on its Baidu Cloud accounts on August 10, 2014 and was yet again instructed to clean up its platforms by Chinese regulators." *Id.*

- "In March 2015, the Chinese government fined Baidu more than 210,000 yuan or $33,800 USD for uploading obscene pornographic novels on Baidu App and for carrying online publications without the requisite permits." *Id.*

- "On January 15, 2016, the SIIO summoned Baidu executives for questioning for hosting forums containing pornography and libelous posts, selling advertising to unlicensed hospitals, and hosting and selling the management of its Baidu Post medical forums to private hospitals, who used the forums to peddle their own services." *Id.* ¶ 64.

- "On May 6, 2016, the Chinese authorities again fined Baidu and suspended the Company's cloud storage services for storing tens of thousands of pornographic videos and selling access to the accounts on e-commerce platforms." *Id.* ¶ 69.

- In August 2017, the CAC concluded that Baidu hosted content "that contained violence, rumors, obscenity and pornography, and information that harms national security, public safety, and social order." *Id.*

- "On January 3, 2019, the CAC ordered a one-week suspension for some of Baidu's Search and Feed platforms after finding that they were spreading vulgar content." *Id.* ¶ 71. "The CAC's January 3, 2019 actions specifically centered around Baijiahao, Baidu's network of over two million" content providers. *Id.* ¶ 72.

### F. Defendants' Allegedly False or Misleading Statements

Plaintiff alleges that, between March 16, 2019 and March 10, 2020, Defendants made 12 allegedly false or misleading statements regarding Baidu's ability to comply with Chinese regulations governing Internet content. The Court reproduces in the table below the specific statements that Plaintiff alleges to be false or misleading. *See* ECF No. 41-2 ("Securities Fraud

Case No. 20-CV-02768-LHK
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND

Allegation Chart").[1]

| Statement No. | Speaker(s) / Date / Medium | Allegedly False and Misleading Statement or Omission |
|---|---|---|
| 1 | All Defendants / March 16, 2019 / 2018 Annual Report | "We **only have contractual control** over our websites." AC ¶ 86. |
| 2 | All Defendants /March 16, 2019 / 2018 Annual Report | " . . . the business operations of our consolidated affiliated entities, as described herein, **comply with current PRC laws and regulations in all material respects**." AC ¶ 86. |
| 3 | All Defendants / May 16, 2019 / Form 6-K | " . . . **we anticipate online marketing in the near term to face a challenging environment.**" AC ¶ 90. |
| 4 | Defendants Li and Baidu / May 17, 2019 / Earnings Call | "[W]e are . . . **filtering out poor and questionable content with Baidu AI**." AC ¶ 94. |
| 5 | All Defendants / June 19, 2019 / Report | "Baidu search has cleaned up more than 2 billion pieces of harmful information that is mainly harmful to social security and other illegal categories. A total of more than 8,000 groups of search terms including pornography, gambling, drugs, etc. were cleaned up, and more than 500,000 harmful links were cleaned up." AC ¶ 103. |
| 6 | All Defendants / August 19, 2019 / Form 6-K | "**In the first half of 2019, Baidu's AI filtered over one billion misleading, low-quality ad materials and tens of billions of offensive, inappropriate images, texts, videos, and weblinks.**" AC ¶ 106. |
| 7 | Defendants Yu and Baidu / February 28, 2020 / Earnings Call | "**As a result of the coronavirus outbreak**, the Chinese New Year golden week that was originally scheduled to end on January 30, was extended by a week in Beijing. And in some regions in China, the holidays were extended even longer . . . **Consequently, the rebound for online marketing after Chinese New Year has been slow this year**. . ." AC ¶ 114. |

---

[1] The statements highlighted in bold and italics represent the statements that Plaintiff alleges were knowingly and materially false and misleading. *See* ECF No. 41-2.

Case No. 20-CV-02768-LHK
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND

United States District Court
Northern District of California

| 8 | Defendants Yu and Baidu / February 28, 2020 / Earnings Call | "***And that's why you're seeing people come to Baidu during this time, to search, to get their information, to make sure that this is correct*** . . . .but more broadly, the users are going to come here ***because this is where they can verify more reliable information***." AC ¶ 116. |
|---|---|---|
| 9 | All Defendants / March 10, 2020 / 2019 Annual Report | "***We have been and may be subject to penalties in the future for violations of those regulations arising from information displayed on or linked to our websites or mobile apps, including a suspension or shutdown of our online operations***." AC ¶ 120. |
| 10 | All Defendants / March 10, 2020 / 2019 Annual Report | "[T]he business operations of our consolidated affiliated entities, as described herein, ***comply with current PRC laws and regulations in all material respects***." AC ¶ 123. |
| 11 | All Defendants / March 10, 2020 / 2019 Annual Report | "Pursuant to the CAC Order No. 5, ***each network information content service platform is required, among*** others, (i) ***not to disseminate any information prohibited by laws and regulations***, such as information jeopardizing national security . . . ***In addition, a network information content service platform must not, among others, (i) utilize new technologies such as deep-learning and virtual reality to engage in activities prohibited by laws and regulations*** . . . ." AC ¶ 125. |
| 12 | All Defendants / March 10, 2020 / 2019 Annual Report | "We ***only have contractual control*** over our websites." AC ¶ 123.[2] |

### G. Procedural History

On April 21, 2020, Roger A. Ikeda ("Ikeda"), individually and on behalf of all others similarly situated, filed the instant case against Defendants. ECF No. 1. Ikeda brought the case "on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired Baidu securities between March 16, 2019 and April 7, 2020, both dates inclusive." *Id*. ¶ 1. Ikeda brought two claims: (1) violation of Section 10(b) of the Securities Exchange Act of 1934 and SEC Rule 10b-5 against all Defendants; and (2) violations of Section 20(a) of the Securities

---

[2] Statement 12 was not included in Plaintiff's Securities Fraud Allegations Chart. *See* ECF No. 41-2. However, Plaintiff alleges that Statement 12 is misleading in the Amended Complaint, so the Court includes Statement 12 in the table. AC ¶ 123.

Case No. 20-CV-02768-LHK
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND

1    Exchange Act of 1934 against the Individual Defendants. *Id*. ¶¶ 47–62.

2        On June 22, 2020, four members of the putative class filed motions to serve as lead plaintiff

3    in the instant case. ECF Nos. 10 (Sufeng Chung), 14 (Heejong Jacob Joo), 20 (Robert J.

4    Allustiarti), 21 (Li Haibo). On July 20, 2020, the Court granted Plaintiff's motion to serve as lead

5    plaintiff and denied the other three motions. ECF No. 31. The Court concluded that Plaintiff was

6    the most adequate plaintiff because he had the largest financial interest in the relief sought by the

7    class. *Id.* at 1–2.

8        On September 18, 2020, Plaintiff filed an Amended Complaint against Defendants. FAC.

9    Plaintiff filed the Amended Complaint "on behalf of a Class of all persons and entities who

10   purchased or otherwise acquired Baidu securities between March 16, 2019 and April 7, 2020,

11   inclusive," excluding "Defendants, directors, and officers of Baidu, as well as their families and

12   affiliates." *Id*. AC ¶ 143. Plaintiff's Amended Complaint brought the same two claims that were

13   brought in the earlier Complaint: (1) violation of Section 10(b) of the Securities Exchange Act of

14   1934 and SEC Rule 10b-5 against all Defendants; and (2) violations of Section 20(a) of the

15   Securities Exchange Act of 1934 against the Individual Defendants. *Id*. ¶¶ 155–62.

16       On November 2, 2020, Baidu filed the instant motion to dismiss the Amended Complaint,

17   and an accompanying request for judicial notice. ECF Nos. 50 ("Mot."), 51, 52. On December 2,

18   2020, Plaintiff filed an opposition. ECF No. 53 ("Opp'n"). On December 23, 2020, Baidu filed a

19   reply. ECF No. 54 ("Reply").

20       Baidu offers seven exhibits that Baidu argues are subject to the Court's consideration

21   under the doctrines of judicial notice and incorporation by reference. ECF No. 51. Plaintiff "does

22   not object to the Court taking judicial notice of Defendant's proffered exhibits but does object to

23   the Court accepting their contents as true to the degree Defendant submits them for that purpose."

24   Opp'n at 12 n.9.

25       The Ninth Circuit has provided guidance on the applicability of the doctrines of judicial

26   notice and incorporation by reference in securities cases at the motion to dismiss stage. In *Khoja v.*

27

28

Case No. 20-CV-02768-LHK
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND

United States District Court
Northern District of California

United States District Court
Northern District of California

1    *Orexigen Therapeutics*, 899 F.3d 988 (9th Cir. 2018), the Ninth Circuit "note[d] a concerning

2    pattern in securities cases like this one: exploiting [judicial notice and incorporation by reference]

3    improperly to defeat what would otherwise constitute adequately stated claims at the pleading

4    stage." *Id.* at 998. The Ninth Circuit explained that "Defendants face an alluring temptation to pile

5    on numerous documents to their motions to dismiss to undermine the complaint, and hopefully

6    dismiss the case at an early stage." *Id.* However, the risk of improper premature dismissal "is

7    especially significant in SEC fraud matters, where there is already a heightened pleading standard,

8    and the defendants possess materials to which the plaintiffs do not yet have access." *Id.*

9      Baidu requests that the Court take judicial notice or apply the doctrine of incorporation by

10    reference to seven documents: (1) the 2019 Annual Report[3] filed by Baidu with the SEC on March

11    13, 2020; (2) the 2018 Annual Report filed by Baidu with the SEC on March 15, 2019; (3) the

12    May 21, 2019 Form 6-K filed by Baidu with the SEC; (4) the transcript of Baidu's May 17, 2019

13    Q1 2019 earnings call; (5) the August 22, 2019 Form 6-K filed by Baidu with the SEC, including

14    Baidu's August 19, 2019 announcement of its Q2 2019 earnings results; (6) the transcript of

15    Baidu's February 28, 2020 Q4 2019 earnings call; and (7) an article from the China Media Project

16    translating a public notice issued by the Cybersecurity Administration of China. ECF No. 51.

17      All of the foregoing documents are public documents "the accuracy of which is not

18    reasonably subject to dispute." *Wochos v. Tesla, Inc.*, 2018 WL 4076437, at *2 (N.D. Cal. Aug. 27,

19    2018) (taking judicial notice of SEC filings and earnings calls); *see Dreiling v. Am. Exp. Co.*, 458

20    F.3d 942, 946 n.2 (9th Cir. 2006) (noting that SEC filings are subject to judicial notice); *Waterford*

21    *Twp. Police v. Mattel, Inc.*, 321 F. Supp. 3d 1133, 1143 (C.D. Cal. 2018) (granting judicial notice

22    as to presentation that was "publicly available to reasonable investors at the time the defendant

23    made the allegedly false statements" (internal quotation marks omitted)); *Heliotrope Gen., Inc. v.*

24    *Ford Motor Co.*, 189 F.3d 971, 981 n.18 (9th Cir. 1990) (holding that it is proper to take judicial

25

26    ——————————————

27    [3] The Annual Report is also known as Form 20-F. Throughout this Order, the Court refers to these
reports as "the 2018 Annual Report" and "the 2019 Annual Report."

28

notice of a news article). Accordingly, the Court GRANTS Baidu's request for judicial notice. "The Court considers [these documents] in evaluating the motion to dismiss for the sole purpose of determining what representations [Baidu] made to the market. The Court is not taking notice of the *truth* of any of the facts asserted." *Wochos*, 2018 WL 4076437, at *2 (emphasis in original).

## II. LEGAL STANDARD

### A. Motion to Dismiss

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss an action for failure to state a claim upon which relief may be granted. Because Plaintiff brought the instant claims in a federal securities fraud action, Plaintiff is not subject to the notice pleading standards under Federal Rule of Civil Procedure 8(a)(2), which require litigants to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Instead, Plaintiff must "meet the higher, [more] exacting pleading standards of Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act (PSLRA)." *Or. Pub. Emp. Ret. Fund v. Apollo Group Inc.*, 774 F.3d 598, 603–04 (9th Cir. 2014).

Under Federal Rule of Civil Procedure 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Plaintiffs must include "an account of the time, place, and specific content of the false representations" at issue. *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (internal quotation marks omitted). Rule 9(b)'s particularity requirement "applies to all elements of a securities fraud action." *Apollo Group*, 774 F.3d at 605. The "PSLRA imposes additional specific pleading requirements, including requiring plaintiffs to state with particularity both the facts constituting the alleged violation and the facts evidencing scienter." *In re Rigel Pharmaceuticals, Inc. Sec. Litig.*, 697 F.3d 869, 877 (9th Cir. 2012). In order to properly allege falsity, "a securities fraud complaint must . . . specify each statement alleged to have been misleading, [and] the reason or reasons why the statement is misleading." *Id.* (internal quotation marks and alteration omitted). In addition, in order to "adequately plead scienter under the PSLRA, the complaint must state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Id.*

10

1   (internal quotation marks omitted).

2       For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations

3   in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving

4   party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

5   Nonetheless, the Court is not required to "'assume the truth of legal conclusions merely because

6   they are cast in the form of factual allegations.'" *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir.

7   2011) (quoting *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)). Mere "conclusory

8   allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss."

9   *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004). Furthermore, "'a plaintiff may plead

10  [him]self out of court'" if he "plead[s] facts which establish that he cannot prevail on his . . .

11  claim." *Weisbuch v. Cty. of L.A.*, 119 F.3d 778, 783 n.1 (9th Cir. 1997) (quoting *Warzon v. Drew*,

12  60 F.3d 1234, 1239 (7th Cir. 1995)).

### B.  Leave to Amend

13

14      If the Court determines that a complaint should be dismissed, it must then decide whether

15  to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend

16  "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule

17  15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v.*

18  *Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (alterations and internal quotation marks

19  omitted). When dismissing a complaint for failure to state a claim, "a district court should grant

20  leave to amend even if no request to amend the pleading was made, unless it determines that the

21  pleading could not possibly be cured by the allegation of other facts." *Id.* at 1130 (internal

22  quotation marks omitted). Accordingly, leave to amend generally shall be denied only if allowing

23  amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the

24  moving party has acted in bad faith. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532

25  (9th Cir. 2008).

### III. DISCUSSION

26

27

28

United States District Court
Northern District of California

Plaintiff brings one claim against Baidu: violation of Section 10(b) of the Securities Exchange Act of 1934 and SEC Rule 10b-5. AC ¶¶ 155-59. "To plead a claim under section 10(b) and Rule 10b-5, Plaintiff must allege: (1) a material misrepresentation or omission; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation." *Apollo Group*, 774 F.3d at 603.

In the instant case, Baidu contends that (1) Plaintiff fails to plead a material misrepresentation, Mot. at 7–21, and (2) Plaintiff fails to plead scienter for any statement, *id*. at 21–32. The Court agrees with Baidu as to both these arguments, each of which provides an independent basis for dismissal. The Court addresses each argument in turn.

### A. Plaintiff fails to plead a false or misleading statement.

Plaintiff alleges that Baidu made 12 statements that misled investors about the risk that Baidu could be subject to adverse regulatory action by the Chinese government. *See* Section I(F), *supra*. "The PSLRA has exacting requirements for pleading 'falsity.'" *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1070 (9th Cir. 2008). The plaintiff "must allege a misrepresentation or a misleading omission with particularity and explain why it is misleading." *Retail Wholesale & Dep't Store Union Loc. 338 Ret. Fund v. Hewlett-Packard Co.*, 845 F.3d 1268, 1274 (9th Cir. 2017). The Court addresses in turn: (1) Statements 1 and 12; (2) Statements 2 and 10; (3) Statements 3, 7, and 8; (4) Statements 4, 5, and 6; (5) Statement 9; and (6) Statement 11.

### 1. Statements 1 and 12

Plaintiff alleges that two statements regarding Baidu's control of its subsidiaries were misleading. Baidu's 2018 Annual Report stated: "We only have contractual control over our websites." AC ¶ 86 (Statement 1). Baidu's 2019 Annual Report made the same statement. *Id*. ¶ 123 (Statement 12). Plaintiff alleges that these statements were misleading because "at all relevant times, Baidu generated content through its advertising department and monitored content via a dual system of artificial intelligence and human content reviewers." *Id*. ¶ 86. Thus, according to

12

United States District Court
Northern District of California

Plaintiff, "Baidu can and did exercise control over websites, if not directly then through their wholly owned subsidiaries." *Id*

However, the Court concludes that Statements 1 and 12 are not misleading for two independent reasons. First, Plaintiff waived the argument that Statements 1 and 12 are misleading. In the instant motion, Baidu contends that Statements 1 and 12 are not misleading. Mot. at 20–21. However, Plaintiff never responded to that argument or discussed Statements 1 and 12 in his opposition brief. Accordingly, Plaintiff waived the argument that Statements 1 and 12 are misleading. *See Shakur v. Schriro*, 514 F.3d 878, 892 (9th Cir. 2008) (holding that a plaintiff abandoned claims by not raising them in the opposition brief).

Second, Statements 1 and 12 accurately describe the relationship between Baidu and its subsidiaries. Baidu is a Cayman Islands corporation. AC ¶ 25; Rasheed Decl. Exh. A at F-12; Exh. B at F-10. The Chinese government restricts foreign corporations from owning businesses that provide "value-added telecommunications services in China, including online information services." Rasheed Decl. Exh. A at 34; Exh. B at 29. Thus, as a foreign corporation, Baidu cannot own the subsidiaries that run its website. *Id*. As a result, Baidu exercises contractual control over the subsidiaries that run its website. *Id*.

Statements 1 and 12 accurately describe these circumstances. Indeed, Statements 1 and 12 do not deny that Baidu exercises control over its websites. Rather, Statements 1 and 12 expressly state that Baidu has "control over our websites." AC ¶¶ 86, 123. Statements 1 and 12 merely represent that Baidu has contractual control, rather than ownership control, over their websites. *See Brody v. Transitional Hosp. Corp.*, 280 F.3d 997, 1007 (9th Cir. 2002) (concluding that plaintiffs had not stated a claim where a press release stated that the company had received "expressions of interest" from potential acquirers "when in fact it had received actual proposals" because the press release "did not give the impression that [the company] had *not* received actual proposals").

Moreover, Statements 1 and 12 are accompanied by other accurate descriptions of the

United States District Court
Northern District of California

relationship between Baidu and its subsidiaries. Indeed, the section of the 2018 and 2019 Annual Report in which Statements 1 and 12 appear reads as follows: "We only have contractual control over our websites. We do not own the websites due to the restriction of foreign investment in businesses providing value-added telecommunications services in China, including online information services." Rasheed Decl. Exh. A at 34; Exh. B at 29. Thus, immediately after Statements 1 and 12 appear, the 2018 and 2019 Annual Reports accurately describe the nature of Baidu's relationship with its subsidiaries.

Moreover, the 2018 and 2019 Annual Reports contain other accurate descriptions of the relationship between Baidu and its subsidiaries. Specifically, the 2018 and 2019 Annual Reports state that Baidu maintains a "parent-subsidiary relationship" with the entities that own its websites, and has "the power to direct the activities of these entities that most significantly impact [their] economic performance." Rasheed Decl. Exh. A at F-10; Exh. B at F-10. Thus, Baidu's statements were not misleading in the broader context of the 2018 and 2019 Annual Reports in which they appeared. *See SEB Inv. Mgmt. AB v. Align Tech., Inc.*, 2020 WL 5408056, at *7 (N.D. Cal. Sept. 9, 2020) (holding that the plaintiff's theory of falsity was "illogical" because it "selectively ignores" the "surrounding context" of a statement). Accordingly, the Court concludes that neither Statement 1 nor Statement 12 is misleading.

### 2.  Statements 2 and 10

Plaintiff allege that Baidu made two misleading statements regarding Baidu's compliance with Chinese laws and regulations. First, the 2018 Annual Report states that, in the opinion of Baidu's Chinese legal counsel, "the business operations of our consolidated affiliated entities, as described herein, comply with current PRC laws and regulations in all material respects." AC ¶ 86 (Statement 2). The 2019 Annual Report made the same statement. *Id*. ¶ 123 (Statement 10). According to Plaintiff, these statements "were materially misleading when made" because Baidu was not in compliance with Chinese regulations, Baidu's protocols for monitoring illegal content were "critically inadequate," and Baidu was incapable of adequately supervising content. *Id*. ¶¶

14

Case No. 20-CV-02768-LHK
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND

United States District Court
Northern District of California

87, 124.

Statements 2 and 10 are opinion statements. Challenging an opinion statement is "no small task for an investor." *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 194 (2015). There are three theories for pleading falsity of opinion statements: (1) "a theory of material misrepresentation"; (2) "a theory that a statement of fact contained within an opinion statement is materially misleading"; and (3) "a theory of omission." *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 615–16 (9th Cir. 2017).[4] The Court addresses each theory in turn and then discusses the context of the 2018 and 2019 Annual Reports in which Statements 2 and 10 appear.

First, the plaintiff can rely on a theory of material misrepresentation. *Id.* In order to allege that an opinion statement is a material misrepresentation, a plaintiff must allege (1) subjective falsity, i.e. "that the speaker did not hold the belief she professed" and (2) objective falsity, i.e. "that the belief is objectively untrue." *Id.* (quoting *Omnicare*, 575 U.S. at 186).

In the instant case, Plaintiff has not alleged subjective or objective falsity. Plaintiff has alleged that Baidu has a history of investigations and sanctions by Chinese regulators. *See* AC ¶¶ 62–74. However, as to subjective falsity, Plaintiff has not alleged specific facts that suggest that, at the time of the 2018 and 2019 Annual Reports, Baidu did not believe its own counsel's legal opinion that it was in compliance with Chinese regulations. *See City of Dearborn Heights*, 856 F.3d at 617 (concluding that the plaintiff had not alleged that an opinion statement was a material misrepresentation because the plaintiff had not alleged "facts that would allow us to infer

---

[4] Plaintiff contends that the standard for opinion statements does not apply in the instant case. Opp'n at 3. Specifically, Plaintiff asserts that the standard for opinion statements applies only when the speaker's own beliefs are at issue, not when the speaker adopted someone else's opinion, as is the case here, where Baidu adopted its legal counsel's opinion. *Id.* However, courts have applied the standard for opinion statements even when the opinion was offered by the company's agents, such as the company's investment banking firm or accounting firm. *See Rubke v. Capitol Bancorp Ltd.*, 551 F.3d 1156, 1162 (9th Cir. 2009) (applying the standard for opinion statements to a fairness opinion issued by the company's investment banking firms); *In re Velti PLC Sec. Litig.*, 2015 WL 5736589, at *18 (N.D. Cal. Oct. 1, 2015) (applying the standard for opinion statements to a company's description of its accounting firm's opinion).

15

United States District Court
Northern District of California

1   subjective falsity").

2        Moreover, as to objective falsity, Plaintiff has not alleged specific facts that suggest that, at

3   the time of the 2018 and 2019 Annual Reports, Baidu was not in compliance with Chinese

4   regulations. Specifically, Plaintiff has not alleged the specific Chinese regulations with which

5   Baidu was allegedly out of compliance. *See* AC ¶¶ 87, 124. Accordingly, Plaintiff has not alleged

6   that Statements 2 or 10 were material misrepresentations. *See Luo v. Sogou, Inc.*, 465 F. Supp. 3d

7   393, 409 (S.D.N.Y. 2020) (dismissing Plaintiffs' claims where "Plaintiffs do not allege that any

8   single one of the statements Sogou made regarding any PRC regulation or Sogou's compliance

9   efforts was false or misleading at the time it was made").

10       Second, the plaintiff can rely on a theory that a statement of fact contained within an

11  opinion statement is materially misleading. *City of Dearborn Heights*, 856 F.3d at 616.  In the

12  instant case, Plaintiff has not alleged that a statement of fact contained within Statements 2 and 10

13  is misleading. *See* AC ¶¶ 87, 124. Rather, Plaintiff alleges that the opinions expressed in

14  Statements 2 and 10 were misleading. *Id*. Accordingly, Plaintiff does not rely on this theory.

15       Third, the plaintiff can rely on a theory of omission. *City of Dearborn Heights*, 856 F.3d at

16  615–16. In order to claim that an opinion statement was misleading because it omitted material

17  information, the plaintiff must allege facts showing that the company knew undisclosed

18  information that seriously undermined the basis for its opinion. *Id* at 616. In the instant case,

19  Plaintiff contends that Statements 2 and 10 were misleading because they omitted: (a) the fact that

20  Baidu's "current protocols for monitoring illicit content were critically inadequate"; (b) the fact

21  that Baidu had "been investigated by the CAC based on their inability to filter questionable

22  content"; and (c) "Baidu's increased enablement of third-party posting meant that they were

23  incapable of adequately supervising content" as required by the regulations." ECF No. 41-2. The

24  Court addresses each piece of omitted information in turn.

25       One, Plaintiff contends that Statements 2 and 10 were misleading because they omitted the

26  fact that Baidu's "current protocols for monitoring illicit content were critically inadequate." ECF

27

28

16

United States District Court
Northern District of California

No. 41-2. Specifically, Plaintiff alleges that Baidu's reviewers spent "2 to 10 minutes" reviewing each article or video. AC ¶ 49. However, Plaintiff never explains why that amount of time was inadequate. *Id*. Similarly, Plaintiff alleges that Baidu's reviewers relied on "personal judgments" without explaining why that practice was inadequate. *Id*. Accordingly, Plaintiff has not explained why undisclosed information regarding Baidu's content monitoring seriously undermined the basis for Baidu's opinion.

Two, Plaintiff alleges that Statements 2 and 10 were misleading because Baidu failed to disclose that the CAC ordered Baidu to remove content on January 3, 2019, June 12, 2019, and February 5, 2020. ECF No. 41-2. However, the CAC itself announced these orders, and the media reported on them. AC ¶¶ 13, 14, 71, 72; *see also* Rasheed Decl. Exh. G (reporting on the February 5, 2020 order). Accordingly, Baidu did not need to disclose the existence of these orders. As the Ninth Circuit and other courts have held, the securities laws do not require the disclosure of publicly available information. *See Rubke*, 551 F.3d at 1162–63 (concluding that the defendant did not need to disclose information that was publicly available because "[i]t is pointless and costly to compel firms to reprint information already in the public domain") (quotation omitted); *Paskowitz v. Pacific Capital Bancorp*, 2009 WL 4911850, at *6 (C.D. Cal Nov. 6, 2009) ("Securities laws do not require disclosure of information that is readily available in the public domain."); *Textainer Partnership Sec. Litig.*, 2005 WL 3801596, at *6 (N.D. Cal. Dec. 12, 2005) ("[T]he securities laws do not require disclosure of information that is readily available in the public domain.").[5]

Three, Plaintiff alleges that Statements 2 and 10 were misleading because Baidu did not disclose the fact that "Baidu's increased enablement of third-party posting meant that they were incapable of adequately supervising content" as required by Chinese regulations. ECF No. 41-2.

---

[5] Plaintiff contends that Statements 2 and 10 should have included the CAC orders because, "[w]hile the January 3, 2019 event was well-covered by the U.S. media . . . the same is not true for the June 12, 2019 or February 5, 2020 CAC actions." Opp'n at 12. However, courts have concluded that companies need not disclose information that is "readily available" in the public domain. *In re Textainer*, 2005 WL 3801596, at *6; *Paskowitz v. Pac. Capital Bancorp*, 2009 WL 4911850, at *6 (C.D. Cal. Nov. 6, 2009). In the instant case, Plaintiff has not alleged that the CAC orders were not "readily available" in the public domain.

17

1    Plaintiff alleges that some of Baidu's platforms permitted posting by third parties. AC ¶¶ 43, 49,

2    72. However, Plaintiff does not allege specific facts demonstrating that, as a result of third-party

3    posting, Baidu was unable to comply with Chinese regulations. Accordingly, Plaintiff failed to

4    allege that Statements 2 and 10 were misleading because they omitted material information.

5            Finally, Plaintiff's theory that Statements 2 and 10 were misleading is especially

6    unpersuasive because of the context in which those statements were made. Right before

7    Statements 2 and 10, Baidu stated that the opinion of its legal counsel was "subject to the

8    disclosure and risks disclosed" under Baidu's risk factors. *Id.* ¶¶ 86, 123. The 2018 and 2019

9    Annual Reports disclosed the fact that the interpretation and application of Chinese regulations

10   was constantly shifting, such that Baidu might fall out of compliance at any time. *See, e.g.*,

11   Rasheed Decl. Exh. A at 5, Exh. B at 5 ("[Chinese] regulations on online marketing services are

12   evolving, and uncertainties remain with respect to implementation of and compliance with new

13   regulations that may emerge, which in turn may have a material adverse impact on our business . .

14   . ."); Exh. A at 28 ("Because [Chinese] laws, regulations, and standards are subject to varying

15   interpretations, their application in practice may evolve over time . . . . This evolution may result

16   in continuing uncertainty regarding compliance matters . . . ."); Exh. A at 37 ("[W]e have been and

17   may be subject to penalties in the future for violations of those regulations arising from

18   information displayed on or linked to our websites or mobile apps, including a suspension or

19   shutdown of our online operations"); Exh. B at 32 (similar); Exh. A at 63 ("We cannot assure you

20   that the PRC regulatory authorities would find that our corporate structure and our business

21   operations comply with PRC laws and regulations. If the PRC government finds us to be in

22   violation of PRC laws and regulations, we may be required to pay fines and penalties . . . [or]

23   suspend or discontinue our business operations . . . .").

24           When read in this context, Statements 2 and 10 were not misleading about Baidu's ability

25   to comply with Chinese regulations. *See Luo*, 465 F. Supp. 3d at 409 (dismissing claim where

26   company's documents "warned that Sogou 'may have difficulty determining the type of content

27

28

United States District Court
Northern District of California

United States District Court
Northern District of California

that may result in liability" and that, if Sogou was 'wrong,' the company might 'be prevented from operating [its] Internet platforms"); *see also In re Violin Memory Sec. Litig.*, 2017 WL 5525946, at *12 (N.D. Cal. Oct. 31, 2014) ("[W]here a company's filings contain abundant and specific disclosures regarding the risks facing the company, as opposed to terse, generic statements, the investing public is on notice of these risks and cannot be heard to complain that the risks were masked as mere contingencies."). Thus, the Court concludes that neither Statement 2 nor Statement 10 was misleading.

### 3.  Statements 3, 7, and 8

Plaintiff alleges that Statements 3 and 7 were misleading because they omitted information regarding Baidu's compliance with regulations. Section 10(b) does "not create an affirmative duty to disclose any and all material information." *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 44 (2011). Issues are required to disclose information only "when necessary 'to make . . . statements made, in light of the circumstances under which they were made, not misleading.'" *Id.* (quoting 17 C.F.R. § 240.10b-5(b)).

"[N]either Rule 10b-5 nor Section 14(e) contains a freestanding completeness requirement." *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002). "Thus, in order to survive a motion to dismiss under the heightened pleading standards of the [PSLRA], the plaintiffs' complaint must specify the reason or reasons why the statements made by [the issuer] were misleading or untrue, not simply why the statements were incomplete." *Id.*

Accordingly, in *Brody v. Transitional Hospitals Corporation*, the Ninth Circuit concluded that plaintiffs had failed to state a Rule 10b-5 claim where they alleged that a press release "was misleading because it provided information about [the issuer's] stock repurchase program but did not contain information regarding [the issuer's] potential takeover." *Id.* The Ninth Circuit concluded that the plaintiffs had failed to allege that the statement was misleading because, rather than "affirmatively intimat[ing] that no merger was imminent," the press release "neither stated nor implied anything regarding a merger." *Id.*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

In the instant case, Plaintiff alleges that Statements 3, 7, and 8 were misleading because they omitted information about Baidu's compliance with regulations. The Court addresses each statement in turn.

First, Statement 3 is taken from Baidu's May 16, 2019 Form 6-K filed with the SEC: " . . . we anticipate online marketing in the near term to face a challenging environment." AC ¶ 90 (Statement 3). Plaintiff alleges that this statement was misleading because it "conveyed the impression that regulatory compliance did not contribute to the company's near-term challenges" and "omitted information about alleged inadequacies in Baidu's content monitoring process and past instances where the Chinese government took issue with the content available through Baidu's services." *Id*. ¶ 91.

*Brody*'s reasoning applies to Statement 3. In the instant case, Plaintiff has failed to specify the reason that Statement 3 is misleading rather than incomplete. Indeed, Statement 3 "neither stated nor implied anything regarding" Baidu's compliance with regulations. *Brody*, 280 F.3d at 1006. Rather, the subject of Statement 3 was online marketing. Accordingly, Baidu's statement was not misleading. *Id*.; *In re Apple Inc. Sec. Litig.*, 2020 WL 2857397, at *17 (N.D. Cal. June 2, 2020) (concluding that disclosures about the risk of an economic downturn were not misleading despite their failure to discuss the business outlook in China because "none of the risk disclosures broach . . . those topics, 'in the abstract' or otherwise"). Thus, the Court concludes that Statement 3 is not misleading.

Second, Statement 7 is a statement made by Defendant Yu during Baidu's February 28, 2020 earnings call: "As a result of the coronavirus outbreak, the Chinese New Year golden week that was originally scheduled to end on January 30, was extended by a week in Beijing. And in some regions in China, the holidays were extended even longer . . . Consequently, the rebound for online marketing after Chinese New Year has been slow this year . . . " AC ¶ 114 (Statement 7). Plaintiff alleges that Statement 7 is misleading because it conveyed that the rebound "in marketing revenue was slow entirely due to the COVID-19 pandemic" and omitted Baidu's alleged inability

United States District Court
Northern District of California

to comply with regulations. *Id*. ¶ 117.

However, like Statement 3, Statement 7 "neither stated nor implied anything regarding" Baidu's compliance with regulations. *Brody*, 280 F.3d at 1006. Rather, the subject of Statement 7 was the effect of the coronavirus pandemic on online marketing in January 2020. Accordingly, Baidu's statement was not misleading. *Id*.; *In re Apple Inc. Sec. Litig.*, 2020 WL 2857397, at *17.

Furthermore, Statement 7 concerned the effect of the coronavirus pandemic on online marketing in January 2020. AC ¶ 114. The Chinese government did not temporarily suspend Baidu channels until April 8, 2020. *Id*. ¶ 129. Plaintiff never explains why, in making a statement in February 2020 about the effect of the coronavirus pandemic on online marketing in January 2020, Baidu had to include details about regulatory compliance issues that would not occur until months later. Thus, the Court concludes that Statement 7 is not misleading.

Finally, Statement 8 is a statement made by Defendant Li during the February 28, 2020 earnings call: "And that's why you're seeing people come to Baidu during this time, to search, to get their information, to make sure that this is correct . . . but more broadly, the users are going to come here because this is where they can verify more reliable information." AC ¶ 116 (Statement 8). Plaintiff alleges that this statement is misleading because it conveyed that Baidu could filter out "poor and questionable content." *Id*. ¶¶ 116–17.

However, a statement that users come to Baidu to find "reliable information" "neither stated nor implied anything regarding" Baidu's ability to comply with Chinese regulations by filtering out content that did not comply. *Brody*, 280 F.3d at 1006. Indeed, a website might well feature both reliable and poor content. Accordingly, the Court concludes that Statement 8 is not misleading. *Id*.; *In re Apple Inc. Sec. Litig.*, 2020 WL 2857397, at *17

Moreover, Plaintiff's theory that Statements 3, 7, and 8 are misleading about Baidu's regulatory compliance is especially unpersuasive because Baidu made other statements about its regulatory compliance that disclosed the risk that Baidu might fall out of compliance with Chinese regulations at any time. *See* Section III(A)(2), *supra*. Thus, the Court concludes that Statements 3,

21

7, and 8 are not misleading.

### 4. Statements 4, 5, and 6

Plaintiff alleges that Baidu made misleading statements regarding its efforts to filter out content. In Baidu's May 17, 2019 earnings call, Defendant Li stated: "we are . . . filtering out poor and questionable content with Baidu AI." *Id.* ¶ 94 (Statement 4). Baidu's June 19, 2019 Report stated: "Baidu search has cleaned up more than 2 billion pieces of harmful information that is mainly harmful to social security and other illegal categories. A total of more than 8,000 groups of search terms including pornography, gambling, drugs, etc. were cleaned up, and more than 500,000 harmful links were cleaned up." *Id.* ¶ 103 (Statement 5). Baidu's August 19, 2019 Form 6-K filed with the SEC stated: "In the first half of 2019, Baidu's AI filtered over one billion misleading, low-quality ad materials and tens of billions of offensive, inappropriate images, texts, videos, and weblinks." *Id.* ¶ 106 (Statement 6).

However, none of these statements gave the impression that Baidu was in perfect compliance with Chinese regulations. Indeed, none of these statements explicitly mention Chinese regulations. Because these statements did not give the impression that Baidu was in perfect compliance with Chinese regulations, these statements were not misleading. *See Lefter v. Yirandai Ltd.*, 2017 WL 2857535, at *7 (C.D. Cal. June 20, 2017) (concluding that plaintiff had failed to state a claim where the defendant's "disclosures never created the impression that the Draft [regulatory] Measures did not put its business model at risk").

Plaintiff alleges that Statements 5 and 6 are misleading because they omitted the CAC regulatory action on June 12, 2019. AC ¶¶ 105, 107. However, the CAC's June 12, 2019 regulatory action was public, so Baidu was not obligated to disclose it. *See* Section III(A)(2), *supra*.

Moreover, Plaintiff's theory that Statements 4, 5, and 6 could mislead investors about Baidu's regulatory compliance is unpersuasive because Baidu made other statements about its regulatory compliance that disclosed the risks that Baidu might fall out of compliance at any time.

22

1    *See* Section III(A)(2), *supra*. These statements portrayed regulatory compliance as an ongoing

2    challenge, so they were not misleading. *See Asay v. Pinduoduo, Inc.*, 2020 WL 1530745, at *7

3    (S.D.N.Y. Mar. 30, 2020) (dismissing claim where "the Company's disclosures depicted its anti-

4    counterfeiting efforts as an ongoing battle" and "warned that its anti-counterfeiting measures 'may

5    not always be successful'"). Accordingly, the Court concludes that Statements 4, 5, and 6 were not

6    misleading.

7        **5.   Statement 9**

8        Plaintiff next identifies as misleading another statement from Baidu's 2019 Annual Report,

9    which stated: "We have been and may be subject to penalties in the future for violations of those

10   regulations arising from information displayed on or linked to our websites or mobile apps,

11   including a suspension or shutdown of our online operations." AC ¶ 119 (Statement 9). Plaintiff

12   claims that Statement 9 is misleading because it "conveyed . . . that the future risk of enforcement

13   was abstract" and omitted facts about past investigations that would have clarified the risk. *See*

14   ECF No. 41-2.

15       The Court disagrees. Statement 9 is a disclosure that Baidu had been and may in the future

16   be subject to future penalties. Plaintiff does not explain why this statement presents the risk of

17   enforcement as abstract. Rather than presenting the risk of enforcement in an abstract manner,

18   Baidu explicitly stated that it had been subject to past regulatory penalties. *Cf. Siracusano v.

19   Matrixx Initiatives, Inc.*, 585 F.3d 1167, 1181 (9th Cir. 2009) (concluding that a statement was

20   misleading where it provided "no indication that the risk 'may already have come to fruition'")

21   (quoting *Berson v. Applied Signal Tech.*, 527 F.3d 982, 986 (9th Cir. 2009)), *aff'd*, 563 U.S. 27

22   (2011).

23       Plaintiff alleges that the statement should have included facts about past investigations.

24   However, having disclosed that it had been subject to past regulatory penalties, Baidu was not

25   obligated to add the details of each investigation. As Plaintiff acknowledges, Baidu's history of

26   regulatory compliance issues is well-known. The Ninth Circuit and other courts have held that the

27

28

United States District Court
Northern District of California

23

securities laws do not require disclosure of information that is readily available in the public

domain. *See Rubke*, 551 F.3d at 1162–63 (concluding that the defendant did not need to disclose

publicly available information because "[i]t is pointless and costly to compel firms to reprint

information already in the public domain") (quotation omitted); *Paskowitz*, 2009 WL 4911850, at

*6 ("Securities laws do not require disclosure of information that is readily available in the public

domain."); *In re Textainer*, 2005 WL 3801596, at *6 ("[T]he securities laws do not require

disclosure of information that is readily available in the public domain."). Accordingly, the Court

concludes that Statement 9 was not misleading.

### 6.  Statement 11

Finally, Plaintiff identifies as misleading another statement from Baidu's 2019 Annual

Report, which stated: "Pursuant to the CAC Order No. 5, each network information content

service platform is required, among others, (i) not to disseminate any information prohibited by

laws and regulations, such as information jeopardizing national security . . . In addition, a network

information content service platform must not, among others, (i) utilize new technologies such as

deep-learning and virtual reality to engage in activities prohibited by laws and regulations." AC ¶

125 (Statement 11). Plaintiff claims that this description was misleading because Baidu did not

state that it could not assure compliance with this regulation and that it would likely be the subject

of enforcement actions. *Id*. ¶ 126.

However, Baidu's description of Order No. 5 did not create any impression about Baidu's

ability to comply with Order No. 5. *See In re Plains All Am. Pipeline, L.P. Sec. Litig.*, 307 F.

Supp. 3d 583, 622 (S.D. Tex. 2018) (holding that the plaintiff had failed to state a claim because a

description of U.S. regulations made "no representation about" the issuer's actions). Moreover,

other statements in Baidu's 2019 Annual Report made clear that Chinese regulations, their

interpretations, and their applications were in flux, such that Baidu could fall out of compliance.

*See* Section III(A)(2), *supra*. Accordingly, the Court concludes that Statement 11 is not

misleading.

United States District Court
Northern District of California

1    Because Plaintiff has not alleged that Defendants made a false or misleading statement, the

2    Court GRANTS Baidu's motion to dismiss. The Court does so with leave to amend because

3    amendment would not be futile, unduly prejudice the opposing parties, or cause undue delay, and

4    Plaintiff has not acted in bad faith. *See Leadsinger*, 512 F.3d at 532.

5        **B.  Scienter**

6        In order to survive a motion to dismiss, Plaintiff's complaint must also create a strong

7    inference of scienter. *See* 15 U.S.C. § 78u–4(b)(2) ("[The complaint must] state with particularity

8    facts giving rise to a strong inference that the defendant acted with the required state of mind.").

9    With respect to the strong inference requirement, the Ninth Circuit has stated that "[a] strong

10   inference of scienter must be more than merely plausible or reasonable—it must be cogent and at

11   least as compelling as any opposing inference of nonfraudulent intent." *Reese v. Malone*, 747 F.3d

12   557, 569 (9th Cir. 2014), *overruled on other grounds by City of Dearborn Heights*, 856 F.3d at

13   605.

14       As to the meaning of "scienter," the Ninth Circuit has held that a plaintiff's complaint must

15   show that "the defendants made false or misleading statements either intentionally or with

16   deliberate recklessness." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 990–91 (9th Cir.

17   2009) (internal quotation marks omitted). "[F]acts showing mere recklessness or a motive to

18   commit fraud and [the] opportunity to do so" are insufficient. *Id.* "To meet this pleading

19   requirement, the complaint must contain allegations of specific contemporaneous statements or

20   conditions that demonstrate the intentional or the deliberately reckless false or misleading nature

21   of the statements when made." *Ronconi*, 253 F.3d at 432 (internal quotation marks and citation

22   omitted). When an omission is at issue, "the plaintiff must plead a highly unreasonable omission,

23   involving not merely simple, or even inexcusable negligence, but an extreme departure from the

24   standards of ordinary care, and which presents a danger of misleading buyers or sellers that is

25   either known to the defendant or is so obvious that the actor must have been aware of it." *Zucco*,

26   552 F.3d at 991 (internal quotation marks omitted).

27

28

Case No. 20-CV-02768-LHK
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND

United States District Court
Northern District of California

In the Ninth Circuit, the Court must first determine "whether any of the plaintiff's allegations, standing alone, [are] sufficient to create a strong inference of scienter.*" In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1056 (9th Cir. 2014). If none of the allegations are sufficient standing alone, the court should "then consider the allegations holistically to determine whether they create a strong inference of scienter taken together." *Id.* Under this holistic review, scienter is adequately pled if "all of the facts alleged, taken collectively, give rise to a strong inference of scienter." *Police Retirement Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1061–62 (9th Cir. 2014).

In the instant case, Plaintiff contends that Defendants Li and Yu had the requisite scienter for four reasons. First, Plaintiff points to the positions that Defendants Li and Yu held within Baidu. Opp'n at 22. Second, Plaintiff asserts that Defendants Li and Yu had an intimate knowledge of Baidu's regulatory compliance measures. *Id*. at 22–23. Third, Plaintiff contends that Defendants Li and Yu were aware of staffing deficiencies affecting Baidu's content monitoring program. *Id*. at 23. Finally, Plaintiff asserts that Defendants Li and Yu had a motive to conceal Baidu's difficulties in complying with Chinese regulations. *Id.* at 20–21. The Court addresses each reason in turn.

### 1. Defendants Li and Yu's positions do not establish a strong inference of scienter.

First, Plaintiff points to the positions that Defendants Li and Yu held within Baidu and their familiarity with Baidu's content monitoring. *Id.* at 22–23. Courts have held that "it is appropriate to use a defendant's position and responsibilities within the company to support a strong inference of scienter" in some circumstances, including "when the alleged misrepresentations relate to a company's 'core operations.'" *See, e.g.*, *In re Countrywide Financial Corp. Sec. Litig.*, 588 F. Supp. 2d 1132, 1189 (C.D. Cal. 2008). The "core operations theory of scienter" establishes scienter in three circumstances: (1) where the plaintiff pleads allegations that "are particular and suggest that defendants had actual access to the disputed information"; (2) "in rare circumstances where the nature of the relevant fact is of such prominence that it would be absurd to suggest that

26

1    management was without knowledge of the matter"; or (3) when used "with other allegations that,

2    when read together, raise an inference of scienter that is cogent and compelling." *Intuitive*

3    *Surgical*, 759 F.3d at 1062 (citation omitted).

4         Plaintiff cannot show that any of these three circumstances are present. As to the first

5    circumstance, "[p]roof under this theory is not easy." *Id.* "A plaintiff must produce either specific

6    admissions by one or more corporate executives of detailed involvement in the minutia of a

7    company's operations, such as data monitoring . . . or witness accounts demonstrating that

8    executives had actual involvement in creating false reports." *Id.* In the instant case, Plaintiff does

9    not point to "specific admissions by Defendants Li or Yu of their "detailed involvement in the

10   minutia of [Baidu's] operations." *Id.* Nor does Plaintiff point to "witness accounts demonstrating

11   that [Defendants Li or Yu] had actual involvement in creating false reports." *Id.*[6]

12        As to the second circumstance, Plaintiff's allegations do not demonstrate that this is the

13   "rare circumstance[] where the nature of the relevant fact is of such prominence that it would be

14   absurd to suggest that management was without knowledge of the matter." *Id.* Indeed, that rare

15   circumstance only arises when "the information misrepresented is readily apparent" to

16   management because it concerns "prominent facts" that are "obvious from the operation of the

17   company." *Zucco*, 552 F.3d at 1001. In the instant case, Plaintiff's allegations do not demonstrate

18   that Baidu's alleged lack of compliance with Chinese regulations was "obvious from the operation

19   of the company." *Id.*

20        Finally, as explained below, Defendants Li and Yu's positions cannot be combined with

21   other allegations to create a strong inference of scienter because Plaintiff's allegations, considered

22   holistically, do not establish a strong inference of scienter. *See* Section III(B)(5), *infra*. Thus,

23   Defendants Li and Yu's positions are not sufficient to create a strong inference of scienter.

24        **2.   Plaintiff has not adequately alleged that Defendants Li and Yu had an intimate**

25   _____

26   [6] Plaintiff alleges that Defendants Li and Yu "substantially participated in the creation of and had
     exclusive authority and control over the content of Baidu's materially false and misleading
27   statements and omissions." AC ¶ 34 However, Plaintiff provides no support for this allegation,
     such as witness reports.

27

28   Case No. 20-CV-02768-LHK
     ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND

knowledge of Baidu's regulatory compliance issues.

Second, Plaintiff contends that Defendants Li and Yu "displayed an intimate knowledge" of Baidu's regulatory compliance issues. Opp'n at 22. However, Plaintiff's allegations do not demonstrate that Defendants Li and Yu had an intimate knowledge of Baidu's regulatory compliance issues.

In contending that Defendants Li and Yu had an intimate knowledge of Baidu's regulatory compliance issues, Plaintiff cites to two of the alleged misleading statements. First, Plaintiff cites to Statement 4, which is a statement made by Defendant Li during Baidu's May 17, 2019 earnings call: "we are . . . filtering out poor and questionable content with Baidu AI." *Id.* ¶ 94 (Statement 4). However, this statement never mentions compliance with Chinese regulations; rather, this statement concerns Baidu's efforts to clean up its content. *See* Section III(A)(4), *supra*. Second, Plaintiff cites to Statement 8, which is a statement made by Defendant Li during the February 28, 2020 earnings call: "And that's why you're seeing people come to Baidu during this time, to search, to get their information, to make sure that this is correct . . . but more broadly, the users are going to come here because this is where they can verify more reliable information." AC ¶ 116 (Statement 8). However, this statement is about the reliability of Baidu's information, not Baidu's efforts to comply with Chinese regulations. *See* Section III(A)(3), *supra*. Accordingly, the Court concludes that Plaintiff's allegations do not support the conclusion that Defendants Li and Yu had an intimate knowledge of Baidu's regulatory compliance issues.

### 3. Baidu's alleged compliance staffing deficiencies do not establish a strong inference of scienter.

Plaintiff next points to alleged deficiencies in Baidu's staffing of its compliance program. Opp'n at 23. Specifically, Plaintiff alleges that between April and May 2019, five senior Baidu executives resigned. AC ¶ 95. Three of these executives held positions in Baidu's search division, while a fourth executive was the vice president of government relations. *Id.*

However, Plaintiff has not established that these alleged deficiencies in staffing give rise to a strong inference of scienter. The Ninth Circuit has concluded that employee resignations give

28

rise to a strong inference of scienter in limited circumstances. *See City of Dearborn Heights*, 856 F.3d at 622 (holding that "an employee's resignation supports an inference of scienter only when 'the resignation at issue was uncharacteristic when compared to the defendant's typical hiring and termination patterns or was accompanied by suspicious circumstances'") (quoting *Zucco*, 552 F.3d at 1002). These circumstances are not present in the instant case.

Moreover, Plaintiff's allegations do not give rise to a strong inference of scienter. Plaintiff's allegations do not establish that Defendants Li and Yu knew that, solely because of the departures of these five senior executives, Baidu would not be able to comply with Chinese regulations. Indeed, Plaintiff does not specifically allege what positions four of these five executives held, what roles they played in ensuring Baidu's compliance with Chinese regulations, and how long elapsed until they were replaced. AC ¶ 95. Accordingly, the departures of five senior executives do not give rise to a strong inference of scienter.[7]

### 4. Defendants Li and Yu's alleged motives do not give rise to a strong inference of scienter.

Plaintiff asserts that Defendants Li and Yu had a motive to conceal Baidu's difficulties in complying with Chinese regulations. Opp'n at 20–21. Whether the defendants had a motive to commit fraud is relevant to the scienter analysis. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 325 (2007).

Plaintiff asserts that Defendants Li and Yu concealed Baidu's difficulties in complying with Chinese regulations because they wanted to avoid fines and suspensions by the Chinese government. Opp'n at 20. Specifically, Plaintiff alleges that Defendant Li stated that "[i]f we lose our users' support or fail to stick to our values, Baidu will be only 30 days away from bankruptcy." AC ¶ 96. However, Defendant Li's alleged statement does not mention Baidu's

---

[7] Plaintiff's Amended Complaint also alleges that Baidu replaced a Senior Content Manager with one who could not coordinate effectively with regulatory authorities. AC ¶ 117. However, Plaintiff's opposition relies only on the five resignations, not on the replacement of the Senior Content Manager. *See* Opp'n at 23. Because Plaintiff does not contend in his opposition that the replacement of the Senior Content Manager gives rise to a strong inference of scienter, the Court does not consider the replacement of the Senior Content Manager.

29

issues with regulatory compliance.

Plaintiff also points to Baidu's April 2, 2020 bond offering on the Singapore Stock Exchange as a potential motive to conceal Baidu's issues with regulatory compliance. However, Baidu's "routine corporate objectives" do not provide a motive to commit fraud. *See Webb v. Solarcity Corp.*, 884 F.3d 844, 856 (9th Cir. 2018) (concluding that the plaintiff's "allegations regarding Defendants-Appellees' motive to boost the company's profitability and stock prices in the months surrounding the company's IPO are not 'specific' or 'particularized,' as our precedents require"); *see also In re Rigel Pharmaceuticals*, 697 F.3d at 884 (concluding that "allegations of routine corporate objectives such as the desire to obtain good financing and expand are not, without more, sufficient to allege scienter")*; Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1038 (9th Cir. 2002) ("If scienter could be pleaded merely by alleging that officers and directors possess motive and opportunity to enhance a company's business prospects, 'virtually every company in the United States that experiences a downturn in stock price could be forced to defend securities fraud actions.'") (quotation omitted). Accordingly, Defendant Li and Yu's alleged motives do not give rise to a strong inference of scienter.

### 5. Considered holistically, Plaintiff's allegations do not give rise to a strong inference of scienter.

If none of Plaintiff's allegations, standing alone, are sufficient to create a strong inference of scienter, the Court should "then consider the allegations holistically to determine whether they create a strong inference of scienter taken together." *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1056 (9th Cir. 2014). In the instant case, none of Plaintiff's allegations are sufficient to create a strong inference of scienter. *See* Sections III(B)(1)–(4), *supra*. Moreover, when considered holistically, Plaintiff's allegations do not give rise to a strong inference of scienter. Indeed, Plaintiff has not pointed to any allegations that support an inference of scienter. Because Plaintiff's allegations do not give rise to a strong inference of scienter, the Court GRANTS Baidu's motion to dismiss. The Court does so with leave to amend because amendment would not be futile, unduly prejudice the opposing parties, or cause undue delay, and Plaintiff has not acted

30

Case No. 20-CV-02768-LHK
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND

in bad faith. *See Leadsinger*, 512 F.3d at 532.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Baidu's motion to dismiss with leave to amend. Plaintiff shall file any amended complaint within 30 days of this Order. Failure to do so, or failure to cure deficiencies identified in this Order or Baidu's motion to dismiss will result in dismissal of the deficient claims with prejudice. Plaintiff may not add new causes of action or add new parties without stipulation or leave of the Court. Plaintiff is directed to file a redlined complaint comparing the complaint to any amended complaint as an attachment to the amended complaint.

**IT IS SO ORDERED.**

Dated: April 7, 2021

_Lucy H. Koh_

LUCY H. KOH
United States District Judge

Case No. 20-CV-02768-LHK
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND